The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Please be seated, ladies and gentlemen. We'll be happy to hear from counsel in our fourth case, 12-1290 Waldburger v. CTS Corporation. Mr. Korsen, good afternoon. Good morning. Good morning, Your Honor. Under Local Rule 46A, I'd like to introduce the two third-year law students who have been appearing in this case. First, Ms. Emma Maddox, who's arguing this morning, and second, Hillary Keese, who's worked on both briefs and helped prepare for the argument. Thank you, Your Honors. Welcome to each of you. Thank you. We'll be glad to hear from you, Ms. Maddox. May it please the Court, my name is Emma Maddox, and I represent the plaintiffs in this case. The issue today is whether Congress intended that plaintiffs with serious pollutants on their property could sue the responsible party after they've discovered their harm. This issue turns on whether Section 9658 of CERCLA preempts North Carolina's 10-year statute of repose. Subsection A1 of 9658 specifies that the applicable state limitations period shall commence at the federally required commencement date, in lieu of an earlier date provided by state law. The plain meaning of the term statute of limitations, as used in Section 9658, includes statutes of repose. Both are limitations periods that have the same effect of barring a plaintiff's claim before he has an opportunity to discover his harm. This Court is not riding on a clean slate in this case. Traditionally, all statutes of limitations operated like statutes of repose and began at the defendant's tortious act. All statutes of limitations lacked the discovery rule, and this worked when the defendant's act and the plaintiff's injury occurred simultaneously. However, with the development of latent injuries, the traditional rule caused great hardships on plaintiffs, who found that their claims were time-barred before they even had an opportunity to discover their harm. The fifth edition of the Black's Law Dictionary, published in 1979 and in force in 1986, at the time that Section 9658 was enacted, defined statutes of limitations saying statutes of limitations are statutes of repose. It defined statutes of repose by referring directly to statutes of limitations. Thus, the lack of the term repose in Section 9658 is unremarkable, because the two terms were used interchangeably and equated with each other. No federal statute uses the term repose, even though at times Congress has created statutes of repose. The North Carolina legislature itself did not use the term repose in enacting the statute of repose at issue today. Instead, it placed the statute of repose in one sentence at the end of a statute of limitations. Ms. Maddox, I hear you, but a devout textualist would say, but it says limitations. It doesn't say statute of repose. Absolutely, Your Honor. However, a statute speaks from the date of enactment, and in 1986, statute of limitations was the best word that Congress could use to describe both of these limitations periods. So actually, your argument would be that the term is ambiguous, subject to meaning statute of repose or statute of limitations. Well, to the contrary, Your Honor. Our argument is that the term statute of limitations, in fact, meant both statutes of limitations and statutes of repose at the time that the statute, at the time Section 9658 was enacted. Thus, the plain meaning of statute of limitations in 1986 included both limitations periods. This is consistent with the traditional rule, which was that statutes of limitations operated precisely like statutes of repose are understood to operate today. And this is consistent with the fifth edition of the Black's Law Dictionary, which was in force in 1986. I thought it was pretty clear and well settled. To be sure, judges and courts and lawyers and law professors have been loose sometimes in our use of language and have sometimes used these terms interchangeably. But statutes of repose, properly viewed, are part of the substantive law of a jurisdiction. Do you agree with that proposition? I agree that today, Your Honor, we understand these technical differences between statutes of limitations and statutes of repose. However, both of these are considered to be limitations periods with the same effect. And in 1986— See, that's what I'm—I guess I'm challenging you on the effect of a statute of repose. There's no tolling. There's no equitable consideration. Once the period of repose is extinguished, that's the end of the matter. There is no right, there is no substantive right to be enforced, whereas under statutes of limitations, there's the discovery rule and there's tolling and there's equitable considerations. Very different consequence flowing from the label that's applied. Well, Your Honor, that label that is applied is applied primarily by courts and by scholars. But Congress has never used the term repose, and the North Carolina legislature did not use the term repose. Congress had the opportunity to use the word repose in the recommendation, the reported recommendation to Congress. That recommendation discusses separately a statute of limitation and statute of repose. It talks first about a statute of limitations. Then it says the recommendation is intended also to cover the repeal of statutes of repose. Congress chose not to take that particular recommendation. Actually, to the contrary, Your Honor, the recommendation sets forth one recommendation by the study group, the single recommendation that all states adopt the discovery rule, and then states that this recommendation is also intended to cover the repeal of statutes of repose. And Congress adopted neither of these recommendations. Congress went farther and created a uniform federal discovery rule that would preempt all of the applicable limitations, period, that would effectively bar a plaintiff's claim before he has an opportunity to discover his harm. The study group itself used the two terms interchangeably, referring to policies of repose that underlie statutes of limitations. It referred to the statute of repose at issue in this case solely as a statute of limitations. It expressed concern and was, in fact, critical of statutes of repose on the government's brief appendix pages A29 through 32, which it said would not protect the plaintiff with a particularly slow developing injury, the precise injury claimed by the plaintiffs in this case. Isn't that precisely what the purpose of CERCLA was, was to prevent the barring of a claim prior to a person having knowledge of the claim? Absolutely, Your Honor. That is precisely the general purpose of CERCLA, that defendants be responsible for the cost of their pollution, and the specific purpose under Section 9658 that plaintiffs have an opportunity to discover their harm before state limitations periods preclude their claim. In fact, it's clear that Congress was focusing on the precise time period that's at issue in this case. The study group recognized that the harm was caused by latency periods of up to 20 to 30 years, and it focused on latency and delayed impact as the primary issue. It recognized that both of these limitations periods created unreasonable barriers. There's no indication, and in fact, congressional purpose and intent would not be served by preempting one and not the other. Furthermore, one of the issues addressed by statutes of repose is to prevent plaintiffs from sleeping on their rights. The plaintiffs cannot be said to be sleeping on their rights where they do not know and could not reasonably have discovered their harm. The passage of time thus becomes a necessary element in these types of claims. Congress rejected the idea that a plaintiff who is exercising diligence should be nevertheless barred by a state limitations period. Thus, Congress didn't wait for states. It created this uniform federal discovery rule to address this precise problem. Furthermore, it should be noted that there has been some concern in briefing for the possibility of open-ended liability, and it's simply not an issue in this type of case. In fact, Congress created a new or should-have-known standard. The should-have-known portion of that standard is objective, and therefore puts a check on the possibility of endless liability. So that's not at issue. Furthermore, a longer limitations period gives defendants more incentive to clean up their contamination. Well, if contaminated property is left unoccupied for, let's say, 45 years, and then there's a transaction in that property, does the new owner, 48 years later, have a cause of action? Your Honor, to the extent that they can prove their prima facie case and meet the substantive requirements of proving that there was property damage from exposure to a hazardous substance. No, but I guess I'm zeroing in on your rebuttal to the argument on the other side that this would give rise to open-ended indeterminate liability going forward for all lives and being. Your Honor, certainly there's a point at which the plaintiff should have known. But what if the plaintiff doesn't become the title owner for 45 years? Well, Your Honor, that's very similar to the facts in this case. There are plaintiffs who have moved onto the property before there was any indication that the property was contaminated. It was essentially sold to the plaintiff. Doesn't that amount to open-ended indeterminate everlasting potential liability? Only to the extent that the plaintiffs, as they have established in the complaint in this case, can prove the substantive portions of Section 9658. To the extent that they have complained that there is a hazardous substance released into the environment from a facility, they are entitled to be applied the new or should-have-known standard. And there is no way that the plaintiffs in this case should have known of the contamination when the statute of repose had already run by the time they moved to land where it was sold with a clean deed.  Your Honor, in 1986, based on the usage of these two terms and the fact that the term statute of repose was simply not in legislative usage, it was used by courts, it's never been used by Congress before, we should not require Congress to predict the modern meeting and evolution of terms. Well, but these cases have been percolating, so to speak, for years. And Congress has been sitting on its hands. Precisely, Your Honor, which indicates that Congress intended for the broad preemptive scope in Section 9658 to apply to statutes of repose. You mean Congress has just sat back and watched this extraordinary circuit split develop over this statute? Well, to the extent that congressional violence indicates their intent, in this case, the majority, although the federal courts are one-to-one at present, the majority of the district courts have found preemption on this particular issue. Thus, if Congress were going to change the language or amend the statute, then it should do so to explicitly exclude statutes of repose, not to explicitly include them. Accordingly, Congress has, in concert with congressional intent, Congress would not do so. It's simply against congressional purpose because it recognized that both of these limitations periods were unreasonable barriers to plaintiffs who were subject to latent toxic torts, as these plaintiffs are. Accordingly, Congress was providing defendants with certainty in Section 9658, certainty that defendants would be required to clean up their own pollution. Doesn't the scholarship at the time also support your position? Correct, Your Honor. There are numerous law review articles from the 1980s showing that this traditional rule and this historical usage of the two terms, and furthermore, the study group report itself used the terms consistently with this historical use, and that can be found on the government's brief at page A10 and A23. Accordingly, it's clear that the use of these terms, these terms were both limitations periods, and to the extent that they preclude a plaintiff's claim before he has an opportunity to discover his harm, it thwarts congressional intent in the enactment of Section 9658. Accordingly, for these reasons, the plaintiff respectfully requests that this court reverse the order of the district court. Thank you. Thank you very much, Ms. Maddox. Mr. Holman, we'll be glad to hear from you, sir. Thank you. May it please the Court. This case involves the district court's application of the most fundamental rule of statutory construction, that if a federal statute is clear and unambiguous, courts are required to apply the statute as written. Applying this basic principle to the assertion of federal preemption of state substantive law, the district court correctly dismissed plaintiff's nuisance claim as barred by North Carolina's 10-year statute of repose. Ms. Maddox dodged my question and said the term was not ambiguous, but suppose it is ambiguous because of the time that Congress was using the terms, or the courts were using it interchangeably. Couldn't one make an argument that it is ambiguous? Obviously, that argument has been made in this case, Your Honor. I do not believe that argument is consistent with the express language that Congress used in drafting 9658. And as the U.S. Supreme Court has stated repeatedly, the preeminent canon of statutory interpretation requires the court to, quote, presume that the legislature states in a statute what it means and means in a statute what it says. Inquiry begins with the statutory text and ends there as well if the text is unambiguous. So the question becomes and the focus of this court's determination should be first and foremost the text of the statute. Is there evidence in this case that there was some misuse of the term statute of repose in case law, in law articles and other documentation at that time? There is. Does that in any way affect the language that Congress chose? And the answer is not. I don't see how it follows quite so neatly. If legions of lawyers, law professors, and judges for decades, if not centuries, have used these two terms interchangeably, how can they not be, how can the use of statute of limitations in this statute not be ambiguous? First, Your Honor, looking to the language that Congress used, it's clear that it is consistent entirely with the definition of statute of limitations. It's inconsistent with statute of repose. Now, looking at the statute itself, we don't have a definition of statute of limitations. That begs the question. What you do, Your Honor, have is the application of the statute. First of all, you've got repeatedly throughout the statute the references to statutes of limitations. You have no reference whatsoever to statutes of repose. Importantly, though, the context and the purpose of the statute is correctly consistent with the manner in which statutes of limitation were applied, and that reflects Congress's clear understanding of statutes of limitation. What if North Carolina had a five-year statute of repose? Would your argument be the same? My argument would be the same if there's a statute of repose. What if it had a four-year statute of repose? Would your argument be the same? My argument would be the same. So what was Congress's purpose here? Congress's purpose was to do, as best that can be told from a limited legislative history, was first and foremost to address the issue of latency disease. That's not at issue in this case. Secondly, and the manner in which it sought to do that, as best as can be gleaned from the study report, was to address the discovery rule. The discovery rule is a rule that is applicable and pertinent solely to statutes of limitation. It has no application whatsoever to statutes of repose, and thus the entire structure that Congress chose in addressing and imposing this minimum discovery rule is only consistent with statutes of limitation. It's not consistent with statutes of repose. When you say there's no latent disease issue in this case, you don't mean to suggest to you that the meaning of this statute depends on whether or not a particular case raises that issue? Thank you, Your Honor. I do not. Of course. Let me read you a term and see if you can tell me if there's anything unreasonable about it. The term statute of limitations could mean simply that statutes that limit the time within which a cause of action must be commenced after it accrues, or alternatively, could include statutes that govern the time within which the cause of action must be commenced regardless of the accrual date. Aren't both of those? Doesn't that address the statute of repose issue? Your Honor, I'm sorry. I don't believe that there's anything that changes the fact that the study report clearly reflected the distinction between statutes of limitation and statutes of repose. It came out with two specific recommendations to address both of them, which incidentally, and as opposing counsel indicated, was a state action. So yes, Congress went further than was recommended in the study group report in taking action at all, but that should not lead to the conclusion or the inference that Congress took the additional step to address every component or potential cause of the problem that is reflected in the study report. What Congress did do was address the principal issue, which was the effect of the absence and inconsistency among states with discovery rule and not having a discovery rule. That was the first recommendation that the study group provided, which was that all states that have not already done so clearly adopt the rule that an action accrues when the plaintiff discovers or should have discovered the injury or disease and its cause. That is entirely consistent with precisely what Congress did in 96-58. The second recommendation of the study group was the recommendation is intended also to cover the repeal of statutes of repose, which in a number of states have the same effect as some statutes of limitation in barring plaintiff's claims before he knows that he has one. So a different recommendation made, clearly a distinction made that Congress was aware of prior to the enactment of the statute between statutes of limitation and statutes of repose, two different remedies for addressing both. Congress chose one. Thus the study group reflects the group's recommendation of two separate actions, one of which was adopted and modified by Congress taking action itself and pursued, the other of which was not. There's also good reason for Congress having taken the action that it did solely to address the discovery period but not statutes of those. The discovery period for the accrual of statutes of limitation, again, was a clear focus of the study group. It was a primary problem that the study group spent the time discussing. Again, the two recommendations made to Congress, Congress adopts one. You have the structure of 96-58 being inapplicable entirely to statutes of repose. It does not even make sense if you try to use that same language and apply it to statutes of repose because statutes of repose, within statutes of repose it's entirely irrelevant when an action accrues or not. You also have Congress being more likely to have been reluctant to preempt state substantive law. You also have important policy considerations regarding finality guaranteed by statutes of repose. I'm sorry. What is a common law statute of limitation? That really seems like an oxymoron. Your Honor, I believe that the study group report reflected that there were common laws. But I'm asking you to step back from the study group report because I think your argument in part is that we don't even get to the study group report unless there's ambiguity in the statute. That's entirely. Okay. So I suggest then you don't provide an answer to my question through reliance on the study group report. So looking at the statute, what on earth is a common law statute of limitations? Your Honor, I would submit that it's clear from 96-58 that common law was intended to apply to common law statutes of limitation. What is a common law statute of limitation? It is. It's like a flightless airplane. Your Honor, to the extent that there's ambiguity in that term, that ambiguity has no pertinence to the decision before the court because there is no. You're prepared to concede then that there's ambiguity in the statute. If there's ambiguity in a term in a statute, then there is ambiguity in that statute. I'm not prepared to concede that there's ambiguity in the statute. I believe that it's clear that it's intended to apply to limitations period that are equated with statutes of limitation that are addressed in common law. Could you give me an example? I'm not. It would be a case that, for whatever reason, establishes some limitations period for some reason. Like borrows as we do in federal jurisprudence. We sometimes borrow a state statute of limitation. Or perhaps interprets some ambiguity within that state as to the accrual time frame for that cause of action. Accrual is different from statute of limitations, right? Well, the accrual date would be included within the statute of limitations. So if there was a case law. Actually, that's not true, is it? The origin of the discovery rule was a judicial imposition on legislatively enacted statutes of limitations. The discovery rule didn't originate in the statute. Your Honor, I'm not aware of where it originated. But clearly within the context of this case, it was intended to apply to statutes of limitation. I will note as well, pertinent to your point, that in Robinson v. Shell Oil, the Supreme Court has explained that the pertinent statutory analysis is for the court to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case. It's interesting you mention Robinson because Robinson, as you well know, was a 9-0 reversal of this court by the Supreme Court, which on the basis of a plain meaning interpretation of a statute. Your Honor, I see my red light is on. Yes, it is. A little late. Thank you very much, Mr. Holman. We'll hear from Mr. Tenney. May it please the Court, Daniel Tenney for the United States. I'd like to start where we left off in terms of what a statute of limitations is and how it can be set out in common law. You can look to Black's Law Dictionary from 1979 or 2009. The relevant definition is the same, and the 1979 version is reprinted on page 6 of the reply brief, and it says that what it is is it requires a claim to be brought within a specific period of time after the right accrued. Now, the history of statutes of limitations is that, If I may, just very quickly, is the statute ambiguous or not in the view of the government? No, but not simply because of the words, but also because of the way it operates, if I could just explain. Now, with respect to your earlier question, a statute of limitations, we use that term statute of limitations, but it can be set out in common law. Some states didn't have legislative enactments that set the amount of time that a claim was live for, and so that was instead done through common law. Now, you could have a common law statute of limitations, which would say the claim accrues on a particular date. I'm sorry, can you give me an example? It's probably in your brief, but give me an example of a common law court not applying latches, but actually saying, We hereby announce that this cause of action is barred after X number of months, days, weeks, or years. Do you have a ready example? I don't have one off the top of my head. I know that such examples exist. Do you have one from the United Kingdom? There are examples in the United States. The rule of repose that was at issue in some of the Alabama cases was a judicially created rule. Now, that was not a limitations period, it was a repose period. But the point is that courts sometimes say you have this many years, and the distinction we're drawing here is between when courts say you have this many years after the right accrues, which is thought of as a statute of limitations, and when you say you have an amount of time and then there are other attributes of repose, not subject to tolling, starts from a fixed date known to the defendant, substantive rather than procedural, all of which are met by this North Carolina provision. Now, going back to your question of why we don't think the statute is ambiguous, it's not just the three-word statute of limitations. You look at the way the statute operates. The way it operates is by delaying the commencement date or the accrual date of the running of the statute of limitations. That is not something that is done with respect to statutes of repose. This court's decision in First United Methodist concerned a state provision that told limitations periods when there was fraudulent concealment by the defendant. And this court held that that provision, that legislative enactment, it didn't even use the word statute of limitations, that enactment did not affect the operation of the statute of repose in that case because statutes of repose are not subject to tolling, they're substantive and not procedural. And so what Congress did here was Congress enacted a provision that delays the commencement date of the statute of limitations. That is a discovery rule. Everyone agrees that what they were doing was enacting a discovery rule. And discovery rules are something that you have for statutes of limitations. Statutes of repose don't have discovery rules. They start to run on a date that's known to the defendant. And we know that, in particular, we can look at the North Carolina provision that's at issue in this case. There is a statute of limitations. It's three years. And there's a discovery rule. The statute of limitations does not begin to run until the plaintiff has discovered their injury under state law. And there's also a statute of repose. And so the idea that Congress would have wanted to say, yes, we want states to have a discovery rule, but if a state has taken the substantive step of saying, as a matter of substantive state law, we want the defendant to be free of liability regardless of when the plaintiff is injured or regardless of when the plaintiff's injury is discovered after a fixed period of time, Congress did not repeal statutes of repose. So a North Carolina statute of repose of four years passes muster, not preempted. Right, but that underscores the point. What about 42 months? North Carolina could bar these cause of action entirely. That's another point. CERCLA was not preempting substantive state law. I'm not going to destroying the cause of action. I'm asking, I'm testing, I'm trying to test to see just exactly where you draw the line. So you say no preemption on 48 months, no preemption on 42 months. What about 36 months? What I was getting at. What about 36 months? 36 months, no preemption. If it was zero months, no preemption. That's the point I was making. I don't want to go to zero. I don't want to go to zero. That's a different set of problems. That's a different set of problems. But let's go to two years. I don't think any state has such a statute of repose. That's not a part of my question. What if the North Carolina legislature decided tomorrow, we've had enough of these nuisance suits. If the federal government wants to take care of these brownfields and all of this problem, let them take care of it. We're going to have a two-year statute of repose. Because the 11th Circuit says, or the 5th Circuit says, there's no preemption. So let's do that. They could do that. They could do that. And that goes to our point, because Congress did not, Congress was presented with proposals to create a federal cause of action or to make substantive alterations to state law, but they did not enact any of those proposals. What Congress decided was that if the, these state tort actions are going to be state tort actions. They're not going to be federal actions. And if a state wants to cap damages, if a state wants to eliminate the cause of action entirely, if a state wants to have a statute of repose, the state can do that. All we're doing is making a procedural change that we're saying that there has to be a discovery rule. And that's clear from the context, but that's also clear from the language, because the way the statute operates is to create a discovery rule, which is something you do for statutes of limitations. It does not purport to change substantive law. And if, even if we thought, if you thought that the statute was ambiguous, the relevant canon of construction would be that this is a statute preempting state law and it should be construed narrowly. And, and we don't, we wouldn't like. It expressly preempts state law. It expressly preempts state law. Why would we construe it narrowly if it expressly preempts state law? You would, if it expressly preempts state law, and so we're not saying that you construe it contrary to its terms. What we're saying is that if it's ambiguous, you wouldn't likely presume that Congress preempted state law to a greater extent than Congress has made clear. That's the only point we're making on that. We're not saying it doesn't preempt state law. It does. It preempts statutes of limitations that begin on the date when the cause of action accrues, and the way it affects them is to delay the date on which the cause of action accrues. And in this case, it has a limited effect on North Carolina law because North Carolina already has a discovery rule. There were some states that didn't have discovery rules, and there were some states that it was uncertain whether they were going to have discovery rules, and Congress wanted everybody to have a discovery rule. If a state enacted a substantive provision that altered the cause of action in some way, including through a statute of repose, Congress simply did not enact any provision that would do that. And the report suggests, and this is accurate, that if Congress wanted to affect statutes of repose, it would repeal them. There's no suggestion that anything in CERCLA repeals any provision of state law. That's what they would have to have done. If there are no further questions, we would ask that the judgment be affirmed. Thank you, Mr. Tate. You have reserved a little time, Ms. Maddox. May it please the Court, Your Honors. Would you change your answer to Judge Floyd's question? I will. I apologize for dodging your question. If this statute is ambiguous, Your Honor, which it is at least ambiguous given this interchangeable use of the two terms in 1986, this Court would turn to the legislative history. In particular, Congress, in the House report, notes specifically that it adopts the problem recognized by the study group. The problem that the study group stated clearly in its report was that certain state statutes deprive plaintiffs of their day in court, that limitations periods that do so are unreasonable barriers to the plaintiff's claim because they preclude his action before he has an opportunity to discover his harm, consistent with the general purpose of CERCLA of tagging defendants with the cost of their action and the specific purpose of Section 9658. Isn't a discovery rule uniquely applicable to a statute of limitations and not to a statute of repose? Well, Your Honor, both the defendant and the government talked about a statute of repose not having commencement and discussing accrual. Section 9658 does not use the word accrual. Statutes of limitations, as used in Section 9658, refers to statutes that generally commence. Statutes of repose commence at the time of the defendant's last act. And this understanding is consistent, if not for all statutes of repose, particularly for the statute of repose at issue in this case. The North Carolina statute of repose is within an article where the first statute of the article, NCGS 1-46, states the periods prescribed for the commencement of actions are set forth in this article. Furthermore, the North Carolina legislature placed the statute of repose within a chapter entitled Civil Procedure and a subchapter entitled Limitations. Why should Congress be expected to use the term repose when the North Carolina legislature was not even using the term repose itself  with regard to the statute at issue? Accordingly, the defendant stated that the study group presented two recommendations, and again I would reiterate that this is an incorrect reading of the study group report. In fact, it discussed a single recommendation that all states adopt the discovery rule and stated, and I quote, this recommendation is also intended to cover the repeal of statutes of repose which have the same effect as statutes of limitations. Thus, it is clear that in order to fully address the problem recognized by Congress, by the study group commissioned by Congress, Congress would be preempting both limitations periods, which would be an unreasonable barrier to the plaintiff's claim. Furthermore, a statute should not be construed in a way that frustrates its purpose, and to construe this statute so that Congress intended to preempt one limitations period and not the other would frustrate the essential purpose of providing plaintiffs with their day in court. In fact, statutes of repose are more harmful in this type of case because statutes of repose are more likely to have the operational effect on the plaintiff's claims that Congress intended to preempt. Statutes of repose act within the time frame that the study group recognized of 20 to 30 years. Statutes of repose have the most effect on these latent toxic torts and the delayed impact that Congress understood in the study group report. Accordingly, CERCLA is to be afforded a uniform... It's a uniform statute, and the Supreme Court has recognized this feature of CERCLA. And to presume that Congress preempted one limitations period and not the other would permit plaintiffs in different states to have different effects on their latent action, latent toxic tort actions. For example, in Virginia, there is no statute of repose for these types of cases, so Virginia plaintiffs who could have suffered from the precise injury from the same defendant would be able to bring these claims while victims of latent toxic torts in North Carolina are barred from them. Is that a necessary function of our federal system? Your Honor, the defendant has not made a Tenth Amendment argument in this case, and furthermore, the statute of repose in North Carolina would still apply to numerous cases that do not fall within the substantive preemption provisions of CERCLA of being involved in this release of a hazardous substance from a facility. Your Honors, I can see that my time is up. Thank you. Thank you very much, Ms. Maddox. We appreciate counsel's presentations across the board. We will ask the clerk to adjourn court and we'll come down and greet counsel.
judges: Andre M. Davis, Henry F. Floyd, Stephanie D. Thacker